FIDELITY TRUST COMPANY v. J. D. WHITEHEAD ET ALS.

(Filed 4 March, 1914.)

1. **Bills and Notes—Fraud—Burden of Proof.**

    Where fraud in the procurement of note is pleaded as a defense to the payment of a note, with evidence tending to establish it, the burden of proof is on the plaintiff claiming to be a holder in due course, to show that he purchased in good faith and without notice of any infirmity or .defect, for value and before maturity.

2. **Same—Infirmity—Default in Interest—Notice—Evidence.**

    As to whether default in payment, when previously due, of interest on a negotiable note acquired before maturity is alone

evidence of notice of the infirmity of the instrument, *Quære.* But in this case it is held sufficient to be submitted to the jury with the further evidence that the note was purchased at a considerable discount, and the maker was sued in another State when the indorser was solvent, lived in the same town with the plaintiff, and had not been sued on his indorsement.

**3. Trials—Courts—Remarks—Appeal and Error.**

In an action by a bank upon a note, the remarks of the trial judge that the witness may be of good character and a good banker, but that not every such one knows the law, is held not prejudicial or reversible, if erroneous.

APPEAL by plaintiff from *Peebles, J.,* at August Term, 1913, of HALIFAX.

*Clark & Clark, George C. Green, and Winston & Biggs for plaintiff.*

*W. E. Daniel, R. C. Dunn, and E. L. Travis for defendants.*

CLARK, C. J. This is another action, of which we have had several, upon a note to McLaughlin Brothers as part of the purchase price of a French coach horse. See *Trust Co. v. Ellen,* 163 N. C., 45. The defendants pleaded fraud in procuring the note, as a defense, and that issue is so found, and there is no exception on the part of the plaintiff. The burden as to the second issue, whether the note was "purchased in good faith and without notice of any infirmity or defect and before maturity and for value," was on the plaintiff, Revisal, 2208; *Bank v. Exum,* 163 N. C., 203.

The note was dated 2 November, 1907, payable 1 July, 1911, "with interest at 6 per cent, payable annually." The plaintiff purchased the note, according to its own evidence, on 1 November, 1909, when at least one installment of interest was past due.

The court charged the jury that the fact that interest was unpaid on the note was a circumstance to be considered in passing upon the second issue, and that they could also consider the further circumstances that the president of the plaintiff company testified that McLaughlin Brothers were indorsees on the note and were solvent, and lived in the same town, and that the

plaintiff, instead of bringing suit against them, came to North Carolina to.sue the defendants. The jury were also entitled to consider the further fact that upon the plaintiff's evidence it bought the note for $1,490.64 when its face value at that time was $1,624.30, and that there was no indorsement on the note of payment of past-due interest.

These were circumstances which the defendants were entitled to have submitted to the jury upon the second issue which the jury found against the plaintiff. The plaintiff earnestly contended that the nonpayment of interest when it fell due was not notice of dishonor. The court, however, simply left it to the jury, together with the other circumstances above named, for the jury to find whether or not the plaintiff was a purchaser without notice.

As to the abstract proposition, for such it was in this case, "where a note is payable on a future day, with interest payable at stated periods before the maturity of the principal of the note, whether the nonpayment of the installments of interest is notice of dishonor," the authorities are divided. In *Newell v. Gregg,* 51 Barb., 263, it is held: "Where a note is payable at a future day, with interest payable annually, the payment of interest annually is as much a part of the agreement as a promise to pay the principal. It is a portion of the debt, and if when the note is bought by a third party the interest is past due, the note is then dishonored." Tiedeman Com. Paper, sec. 297.

There are cases which hold to the contrary, and in Daniel on Neg. Instr., sec. 787 (Calvert's Ed.), it is said: "The weight of authority is that the *bona fide* purchaser for value is within the protection of the law merchant, although interest is overdue and unpaid at the time of the purchase," the authorities being cited in the notes. The notes, however, cite *Guckian v. Newbold,* 22 R. I., 279, which held that nonpayment of annual interest was notice of dishonor, though this was explained in a subsequent case between the same parties (23 R. I., 553) to apply where a note had run for a long time with no apparent reason for the delay, and there was nonpayment of interest. We think, however, that there is a distinction between nonpay-

ment of interest on an ordinary negotiable instrument and non-payment of coupons upon municipal and other bonds referred to in many decisions quoted in the notes to 2 Daniel Neg. Instr., sec. 1506.

In *Union Investment Co. v. Wells,* in the Supreme Court of Canada, 11 A. and E. Anno. Cases, it was held that the non-payment of interest payable at stated periods before the maturity of the principal was not notice of dishonor. But there was a very able dissenting opinion, concurred in by two of the judges. The note to that case is very full, and shows a conflict of authority. To the same effect is *Winter v. Nobs* (Ida.), 24 A. and E. Anno. Cases, 302. The very full notes to that case show that while such is the preponderance of authorities, there are cases to the contrary. Notably, *Bank v. Brisch,* 154 Mo. App., 631, and *Bank v. Couse,* 124 N. Y., 79, which follow the doctrine laid down in *Newell v. Gregg,* 51 Barb., 279, above cited.

We do not need, however, to confine ourselves to either of these two lines of decision, for this case does not depend upon that one circumstance of the nonpayment of interest. Even if it did, there is a line of authorities represented by *Bank v. Kirby,* 108 Mass., 497, which holds that while the nonpayment of interest, falling due at stated periods before the maturity of the principal of the note, is not of itself notice of dishonor, it is a circumstance for the consideration of the jury on the issue whether the plaintiff took it "in good faith and without notice of dishonor."

In the present case, upon the plaintiff's own evidence, there was nonpayment of interest, no indorsement of its payment, the purchase of the note at a considerable discount, and though the indorsee of the note lived in the same town in a distant State, where the bank was located, and was solvent, the plaintiff did not bring its action there, but came to this State to do so; and all these circumstances could be considered by them in passing upon the issue. We think there was no error in leaving these facts to the jury upon the issue as to "notice." It is not neces-

sary, therefore, to discuss the abstract question as to what would have been the effect if the only circumstance had been the non-payment of interest.

As to the remark of the judge, "Mr. Flower may be a man of very good character and a good banker, but it is not every man of good character and who is a good banker, who knows the law," we do not think that, if erroneous, it could have affected the result or would justify a new trial. It might have been left unsaid without hurt to any one, but we cannot see that making the statement was prejudicial to the extent that it could reasonably have affected the verdict.