LAUREL BANK AND TRUST COMPANY *v.* THE CITY
NATIONAL BANK OF CONNECTICUT

APPELLATE SESSION OF THE SUPERIOR COURT

FILE No. 130

Argued January 14—decided May 28, 1976

*David Brown,* for the appellant (plaintiff).

*Robert J. Berta,* for the appellee (defendant).

SPONZO, J. In this action the facts may be summarized as follows: The plaintiff and the defendant were at all times pertinent to this case commercial banks duly authorized to conduct business in this state and had checking account facilities available for their respective customers. On March 27, 1973, and for some time prior thereto, one A. S. Maisto maintained two checking accounts with the plaintiff. One account was No. 0-41190-6 and was conducted under the name of "Tony's Sunoco," and the other account, No. 0-41233-3, was maintained

under the name of "B & D Automotive." On the same date A. S. Maisto had an account with the defendant at its office in the town of Cheshire.

Between the hours of 1 p.m. and 2 p.m. on March 27, 1973, Maisto purchased from the defendant an official check, or cashier's check, in the amount of $3446. That cashier's check was paid for with two checks plus cash. One of the checks was in the amount of $2585.50 and was drawn by Maisto on the account No. 0-41190-6 that was maintained with the plaintiff. In order to draw an official check, the defendant's teller had to obtain the approval of an officer. As a result of that requirement, an officer of the defendant bank telephoned the plaintiff bank and was assured by an unknown person in the bookkeeping department that "Maisto's check for an amount over $2500 was good at this time." The defendant then issued its official check to Maisto.

On March 27, 1973, at about 4:15 p.m., that cashier's check together with other items, all of which totaled $9501, were deposited by Maisto with the plaintiff in account No. 0-41233-3, which at the time of deposit was overdrawn to the extent of $21,079.43. That transaction was entered as a check deposit in the plaintiff's bookkeeping record for March 28, 1973, since all banking transactions occurring after 3 p.m. are recorded as received on the next day. The deposit of $9501 was provisionally credited by the plaintiff to the B & D Automotive account, No. 0-41233-3, subject to later withdrawal or reversal of credit, and the overdrawn balance was reduced by that amount.

On March 28, 1973, the plaintiff returned the check in the amount of $2585.50 to the defendant because of insufficient funds. The plaintiff presented the official or cashier's check in the amount

of $3446 to the defendant through normal bank collection procedures and the defendant dishonored the check in that it stopped payment thereon. The check was returned to the plaintiff unpaid, remains unpaid to date, and is the subject matter of this action. The signature of the drawer on the cashier's check has been admitted.

The trial court concluded that the plaintiff was a mere holder of the cashier's check because it did not establish that it took the check for value. It also concluded that the defendant established a defense of want of consideration because the $2585.50 check which was one of the items used to purchase the cashier's check was subsequently dishonored. Accordingly, the court rendered judgment for the plaintiff in the amount of $860.50, the difference between the $3446 cashier's check and the $2585.50 check. The plaintiff has appealed from that judgment.

The plaintiff has assigned as error the trial court's refusal to find certain facts, its finding facts without evidence, its overruling the plaintiff's claims of law, and its conclusions. We shall not consider the assignments of error regarding the court's refusal to find certain facts or its finding of facts without evidence because the plaintiff failed to move to correct the finding as required by § 567G of the Practice Book.

In its complaint, the plaintiff alleged that the defendant executed and delivered a check drawn upon itself with one A. S. Maisto as payee, and that the plaintiff was the holder of said instrument in that the check was endorsed and delivered by Maisto to it on March 28, 1973. The defendant, in its answer, admitted some of those allegations and set up special defenses, one of which can be construed to allege want of consideration in that it

alleged that "the plaintiff used the proceeds of said bank check to pay other obligations of said A. S. Maisto to it." After denying the allegations of the special defenses, the plaintiff, by way of reply, claimed that it was a holder in due course of the official or cashier's check.

Since the signature on the cashier's check has been admitted, the mere production of the instrument would entitle the plaintiff to recover, even if it were a mere holder, unless the defendant sustained its burden of establishing a want or failure of consideration. General Statutes §§ 42a-3-306 (c) and 42a-3-307 (2). Once a defendant meets his burden of proving that a defense exists, in order to prevail the person claiming the rights of a holder in due course has the burden of establishing that he, or the person under whom he claims, is in all respects a holder in due course. General Statutes § 42a-3-307 (3).

A cashier's check is a bill of exchange drawn by a bank as drawer upon itself as drawee and made to the order of a payee who, as in this case, may also be the purchaser of the check. Under § 42a-3-410 of the General Statutes, such a check is considered accepted when issued to the payee. See *Ross* v. *Peck Iron & Metal Co.,* 264 F.2d 262, 269 (4th Cir.). The fact that a cashier's check is said to be "accepted when issued" does not mean, as the plaintiff contends, that the defendant is obligated to pay regardless of any defenses and regardless of whether the plaintiff is a mere holder or a holder in due course. See *Bank of Niles* v. *American State Bank,* 14 Ill. App. 3d 729, 732. With respect to the issuing bank's ability to stop payment on a cashier's check, analogies to a customer's right to stop payment on an ordinary check are inapposite and confusing. *TPO Incorporated* v. *Federal Deposit Insurance Corporation,* 487 F.2d

131, 136 (3d Cir.). The proper approach is to view the issuing bank, acting in its dual role as drawer and drawee, as the equivalent of a maker of a negotiable promissory note payable on demand. General Statutes §§ 42a-3-104, 42a-3-118 (a).

It is clear that the defendant bank did establish the failure of consideration for issuance of the cashier's check, because the check drawn on the plaintiff which Maisto transferred in payment for the cashier's check was returned for insufficient funds. That defense of want of consideration would be effective against a party who was not a holder in due course. General Statutes § 42a-3-306. If the plaintiff was a mere holder, the trial court was correct in concluding that the defendant had sustained its burden of proving that there was a partial want of consideration to the extent of $2585.50 and in awarding a judgment in favor of the plaintiff in the amount of $860.50 after deducting the sum of $2585.50 from the cashier's check in the amount of $3446.

Since the plaintiff alleged in its reply that it was a holder in due course, it assumed the burden of establishing that it was in all respects a holder in due course. General Statutes § 42a-3-307 (3). To be a holder in due course, the plaintiff must have taken the cashier's check for value, in good faith, and without notice that it was overdue or dishonored or that there was any defense against it or claim to it on the part of any person. General Statutes § 42a-3-302 (1).

The plaintiff contends that the deposit of $9501 made on March 28, 1973, was a cash deposit. That contention has no merit because the unchallenged finding of the court is that it was a check deposit. The principal issue in this case is whether the provisional credit made by the plaintiff against the

B & D Automotive account, which was overdrawn in the amount of $21,079.43, constituted value under § 42a-3-302 (1). The credit entered was subject to a later withdrawal or reversal of the credit by the plaintiff. The trial court concluded that no value was given because the credit was not extended irrevocably. That conclusion was erroneous.

Section 42a-3-303 (b) of the General Statutes provides that a holder takes for value "when he takes the instrument in payment of or as security for an antecedent claim against any person whether or not the claim is due . . . ." Section 42a-4-208 (1) (a) of the General Statutes elaborates on that concept and provides that "[a] bank has a security interest in an item and any accompanying documents or the proceeds of either . . . in case of an item deposited in an account to the extent to which credit given for the item has been withdrawn or applied . . . ." Section 42a-4-209 of the General Statutes completes that thought, stating that "[f]or purposes of determining its status as a holder in due course, the bank has given value to the extent that it has a security interest in an item provided that the bank otherwise complies with the requirements of section 42a-3-302 on what constitutes a holder in due course."

In order to comprehend how the plaintiff became a holder for value under the provisions of the statutes referred to, it is necessary to state the parameters of the security interest with relation to the value concept. It is clear that if a depositor's account is not overdrawn and he deposits a check which is credited to his account but not drawn on, then no value is given. See *Universal C.I.T. Credit Corporation* v. *Guaranty Bank & Trust Co.*, 161 F. Sup. 790, 792 (D. Mass.). It is clear under § 42a-4-208 (1) (a) that a bank has given value and is a holder in due course to the extent that a depos-

itor actually draws against a check given for collection, even if the check is later dishonored. It is immaterial that the bank takes the check for collection only and can charge back against the depositor's account the amount of the uncollected item. *Citizens Bank of Booneville v. National Bank of Commerce,* 334 F.2d 257, 261 (10th Cir.); *Citizens National Bank of Englewood v. Fort Lee Savings & Loan Assn.,* 89 N.J. Super. 43, 47.

The reason for that rule is to prevent the hindrance to commercial transactions which would result if depository banks refused to permit withdrawal prior to clearance of checks. By giving the bank a security interest in the amount credited prior to notice of a stop payment order or other notice of dishonor, §§ 42a-4-208 and 42a-4-209 allow continuation of that common practice while protecting the bank as a holder in due course. *Citizens National Bank of Englewood v. Fort Lee Savings & Loan Assn.,* supra.

While Maisto did not draw upon the deposit of $9501, the deposit was applied to his overdraft or antecedent debt on a provisional basis. Under the circumstances it appears that where the plaintiff applied the deposit, even provisionally, to Maisto's overdrawn account, it gave value and thus cut off the defense of want of consideration. In a leading case, *Bath National Bank v. Sonnenstrahl, Inc.,* 249 N.Y. 391, 394, it was stated: "Though title to a draft left by a depositor with the bank for collection does not pass absolutely to the bank where the full amount of its draft was credited to the depositor, 'for convenience and in anticipation of its payment,' and 'the bank could have cancelled the credit, as it clearly accepted no risk on the paper,' yet if the depositor 'had overdrawn, and this draft had been credited to cover the overdraft, or if the company had drawn against the draft, the bank

could hold the paper until the account was squared.' It would then be a holder for value. *St. Louis & San Francisco Ry. Co.* v. *Johnston*, 133 U.S. 566."

Section 42a-4-201 (1) of the General Statutes provides, in part, that "[u]nless a contrary intent clearly appears and prior to the time that a settlement given by a collecting bank for an item is or becomes final as provided in subsection (3) of section 42a-4-211 and sections 42a-4-212 and 42a-4-213 the bank is an agent or sub-agent of the owner of the item and any settlement given for the item is provisional. . . . [A]ny rights of the owner to proceeds of the item are subject to rights of a collecting bank such as those resulting from outstanding advances on the item and valid rights of setoff." That provision, which makes the bank an agent of its customer, is to be construed harmoniously with § 42a-4-208 (1) which does not derogate from the banker's general common-law lien or right of setoff against indebtedness owing in deposit accounts.

In the present case, the plaintiff's action in provisionally crediting a $9501 deposit to the antecedent debt of the depositor was an exercise of its common-law right of setoff, § 42a-4-208 (1), and also gave the plaintiff a security interest sufficient to constitute value. In *Sandler* v. *United Industrial Bank*, 23 App. Div. 2d 567 (N.Y.), a check was deposited in an account which was overdrawn and the bank credited the deposit in part to repay the overdrawn account and applied the balance to a new item presented for payment. The maker of the check died that evening and his bank returned his check unpaid. The court held that the collecting bank became a holder for value prior to the maker's death. See *Bowling Green, Inc., N.H.* v. *State Street Bank & Trust Co. of Boston*, 307 F. Sup. 648, 654–55 (D. Mass.).

To make a collecting bank a holder for value where it applies a deposit to an overdrawn account is a result consistent with logic and good banking practice. If an account is overdrawn, it is highly doubtful that a bank would pass over an opportunity to erase or reduce the overdraft. That opportunity arises when the customer makes a deposit. The bank credits or sets off the overdraft and waits for final settlement as a holder for value. If the check is dishonored, the bank may then reverse the provisional granting of credit to the overdraft and proceed not only against its customer but also against the drawee bank. If it can proceed against the drawee bank, the latter can then recover from its customer.

The trial court erred in concluding that the plaintiff was not a holder for value when it applied Maisto's deposit, which included the cashier's check in the amount of $3446, to an overdraft in his account, subject to reversal upon dishonor.

There is error, the judgment is set aside and the matter is remanded for a trial limited to the issue of whether the plaintiff took the cashier's check in good faith and without notice that it was overdue, dishonored or that there was any defect or defense.

In this opinion A. ARMENTANO and D. SHEA, Js., concurred.