**NEVE WELCH ENTERPRISES, INC., a Utah Corporation, dba Neve-Welch Furniture & Appliance, Plaintiff and Respondent,**

v.

**UNITED BANK, a Utah Corporation, Defendant and Appellant.**

**No. 17071.**

Supreme Court of Utah.

April 29, 1981.

Don E. Olsen, Salt Lake City, for defendant and appellant.

Brent H. Wall, Gregory B. Wall, Salt Lake City, for plaintiff and respondent.

STEWART, Justice:

Plaintiff, Neve Welch Enterprises, Inc., brought this action to obtain payment on a cashier's check issued by defendant, United Bank, to plaintiff. Neve Welch prevailed in the lower court, and the Bank appeals, contending that it was entitled to stop pay-

ment on its cashier's check. Neve Welch cross-appealed on the ground that the trial court erred in granting a motion for partial summary judgment and in refusing to award consequential damages.

Neve Welch arranged with a company called Tri-Power Electronics to sell various appliances and items on an independent basis at a liquidation sale conducted by Tri-Power in Salt Lake City. The proceeds from the sale of Neve Welch's merchandise were co-mingled with those of Tri-Power. George Welch, President of Neve Welch, gave Lee Klein, President of Tri-Power, an accounting of amounts due from the sale of merchandise. Klein telephoned Loren Urry, Senior Vice President of the Bank, requesting a cashier's check be issued to George Welch. Upon the oral assurances of Klein that deposits would be made, the Bank issued a cashier's check to George Welch for $22,020.80. Mr. Welch immediately deposited the check in his account at Capital City State Bank. Two days later United Bank stopped payment on the check.

■■ A cashier's check is a bill of exchange. The bank is both the drawer and drawee. *Laurel Bank & Trust Company v. City National Bank of Connecticut*, 33 Conn.Supp. 641, 365 A.2d 1222 (1976). Upon issuance of a cashier's check, a bank creates a primary obligation to the payee. *State ex rel. Chan Siew Lai v. Powell*, Mo., 536 S.W.2d 14 (1976); *Bank of Niles v. American State Bank*, 14 Ill.App.3d 729, 303 N.E.2d 186 (1973). The Bank, relying on such cases as *TPO, Inc. v. Federal Deposit, Inc.*, 487 F.2d 131 (3rd Cir. 1973), and *Laurel Bank & Trust Company v. City National Bank of Connecticut*, 33 Conn.Supp. 641, 365 A.2d 1222 (1976), argues that the obligation created by the issuance of the cashier's check is not absolute toward a payee who is not a holder in due course. However, because the facts of the instant case establish that the payee of the check in this case was a holder in due course, we do not address that specific contention.

■ Section 70A–3–302, Utah Code Ann. (1953), as amended, defines a holder in due course as one who takes a negotiable instrument:

(a) for value; and

(b) in good faith; and

(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

Section 70A–3–303 provides that one takes for value:

(a) to the extent that the agreed consideration has been performed or that he acquires a security interest in or a lien on the instrument otherwise than by legal process; or

(b) when he takes the instrument in payment of or as security for an antecedent claim against any person whether or not the claim is due; or

(c) when he gives a negotiable instrument for it or makes an irrevocable commitment to a third person.

Plaintiff is a holder in due course even though it is also the payee. *Christensen v. Financial Service Company*, 14 Utah 2d 101, 377 P.2d 1010 (1963). Because plaintiff's right to the money arose out of a debt owed to defendant by Tri-Power, the purchaser of the cashier's check, and because there is no evidence that plaintiff had notice of Tri-Power's failure or inability to cover the check, plaintiff's good faith was established. Furthermore, the fact that the cashier's check was obtained in payment of an antecedent claim resulted in plaintiff's taking the instrument for value.

There is no merit in defendant's contention that because plaintiff and Tri-Power did not provide the bank with consideration, the plaintiff could not be a holder in due course. The proper focus is the "value" which the payee gave to the purchaser of the negotiable instrument and not to the bank which issued it. Thus the fact that plaintiff did not provide the Bank with consideration for the check is of no importance to the issue of value under § 70A–3–302.

Clearly the bank has a claim for lack of consideration based on Tri-Power's failure to cover the cashier's check, but only as against Tri-Power. Although the Bank was damaged, that fact does not affect plain-

tiff's status as a holder in due course, especially when plaintiff had no knowledge of the Bank's position. *Bank of Niles v. American State Bank*, 14 Ill.App.3d 729, 303 N.E.2d 186 (1973). Defendant's claim of lack of consideration because of the *purchaser's* failure to pay for the cashier's check does not affect the payee's status as a holder in due course. *Laurel Bank & Trust Co. v. City National Bank of Connecticut, supra.*

It is not unfair to hold the bank liable in this case. In *First National Bank of Portland v. Noble*, 179 Or. 26, 168 P.2d 354, 370–71 (1946), the Court referred to the following principles:

"Banks are supposed to be informed of a depositor's financial standing, and to know the condition of his account with them at the time of presentation of checks for payment. They are required, and for their own safety are compelled, to know at all times the balance to the credit of each individual customer, and they accept and pay checks at their own risk and peril. If from negligence or inattention to their own affairs banks improvidently pay when the account of a customer is not in a condition to warrant it, and if by mistake a check is paid when the drawer has no funds, the bank must look to the customer for rectification, not to the party to whom the check was paid. * * *" 2 Michie, Banks and Banking (1913 Ed.) § 142(2bd).

Defendant cites several cases for the proposition that a bank has authority to stop payment on a cashier's check. The cases, however, involve fraudulent conduct on the part of the payee, a factor rendering the payee other than a holder in due course. The cases are not apposite to the issue at hand, since the record is completely devoid of any evidence of intent to defraud.

The conclusion we reach is fully supported by the reliance placed upon, and the uniformity of treatment accorded, cashier's checks in harmony with the necessities of commercial usage. *First National Bank of Portland v. Noble, supra; State ex rel. Chan Siew Lai v. Powell*, Mo., 536 S.W.2d 14 (1976). "A cashier's check circulates in the commercial world as the equivalent of cash. * * * People accept a cashier's check as a substitute for cash because the bank stands behind it, rather than an individual." *Id.* at 16, citing *National Newark & Essex Bank v. Giordano*, 111 N.J.Super. 347, 268 A.2d 327 (1970). Public confidence in banks and the checks they issue is enhanced by maintaining the essential reliability of cashier's checks which makes them so useful. *State ex rel. Chan Siew Lai v. Powell, supra.*

 As for the issues on cross-appeal, the lower court acted within its scope of duties and did not abuse its discretion in its determination of the matters.

The judgment is affirmed. Costs to respondent.

MAUGHAN, C. J., and HALL, HOWE and OAKS, JJ., concur.